UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FRED R. FRIGO, | ) | |
|    *Plaintiff*, | ) | |
| | ) | |
| *vs*. | ) | 1:12-cv-00674-JMS-DML |
| | ) | |
| BRIGHTHOUSE NETWORKS, | ) | |
|    *Defendant.* | ) | |

**ORDER**

Presently pending before the Court is Defendant Brighthouse Networks' ("Brighthouse")[1] Motion for Summary Judgment. [Dkt. 33.]

**I.
STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ.

---

[1] Defendant states that it is properly called Advance/Newhouse Partnership rather than Brighthouse Networks. Although there is evidence in the record to this effect, [dkt. 35-6 at 2], because suit was brought against Brighthouse Networks, and because whether Plaintiff sued the proper party is not at issue, the Court will refer to Defendant as Brighthouse.

P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898.

Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

Mr. Frigo submitted a declaration in support of his claims. For the purposes of this motion, the Court accepts the admissible factual matters contained in the declaration as true and utilizes them in setting forth the factual background. They are not established as objective fact, however. The remaining facts are undisputed, except as noted. Where there is a genuine dispute, all reasonable inferences are drawn in favor of Mr. Frigo, the non-movant.

Brighthouse provides cable television, internet, and telephone services to customers in Indianapolis and other parts of the country. [Dkt. 35-6 at 2 ¶ 4.] It hired Mr. Frigo on August 1, 2011, as a Customer Service Representative ("CSR"). [*Id.* at 2 ¶ 5.] CSRs handle telephone calls from Brighthouse customers regarding service, billing, and sales. [*Id.*] When hired by Brighthouse, Mr. Frigo was fifty-nine years old. [Dkt. 35-1 at 4.] At the outset of his employment, he completed an Employee Personal Data form on which he stated he was of "mixed" race or ethnicity. [*Id.* at 11.] He subsequently explained during his deposition that this was because his grandmother was Latina. [*Id.*] Mr. Frigo acknowledged, however, that he may not appear Latino to others. [Dkt. 35-2 at 2-3.] Shortly after he was hired, Mr. Frigo began walking with a cane due to knee pain. [Dkt. 35-4 at 92.] His age, national origin, and disability form the basis of his claims.

All Brighthouse CSRs must complete a training course before beginning their work. [Dkt. 35-6 at 2, ¶ 6.] Prior to the training course, Mr. Frigo shadowed an experienced CSR, Debbie Aaron, for two weeks. [*Id.*] Mr. Frigo used his cane while shadowing Ms. Aaron, which at one point led her to ask, "don't you know you are too old?" [Dkt. 1-2 at 4.] Also prior to his

training course, Mr. Frigo explained to Brighthouse employee Missy Saint Clair and other trainees that he was Latino and that his father's name had been changed to "the Anglo name of Fred without his permission." [Dkt. 50 at 3.]

Mr. Frigo's CSR training course began on August 15, 2011, and was taught by Brighthouse employee Toni Marcum. [Dkt. 35-9 at 2 ¶ 4.] Although the parties dispute certain details of what transpired during the training course, it is undisputed that Mr. Frigo was critical of the course materials and openly disagreed with Ms. Marcum while she was teaching the course. [Dkts. 35-4 at 2-3; 35-5 at 2; 35-9 at 3 ¶ 9; 48 at 7; 50-4 at 8.] Mr. Frigo's behavior upset Ms. Marcum, who left the class to compose herself. [Dkt. 35-4 at 2-3.] Another Brighthouse employee, Emma Imel, discussed the incident with Ms. Marcum and informed Ms. Marcum that Mr. Frigo was struggling with the material and might not be a "good fit" for the position. [Dkt. 35-9 at 4 ¶ 10.] Ms. Marcum and Ms. Imel later discussed the incident and Mr. Frigo's performance with Brighthouse's Director of Customer Care, Arcadia Washington, who agreed with Ms. Marcum's suggestion that Mr. Frigo should continue his training for another week to determine whether he should remain employed as a CSR. [*Id.* at 4 ¶ 11.]

During Mr. Frigo's training, comments were made regarding his use of a cane. Ms. Marcum asked if he was using the cane when he was hired, and another trainee told Mr. Frigo that his cane made him look like an old evil villain from a James Bond movie. [Dkt. 50 at 4-5.] Ms. Marcum also asked him how long he would need to use the cane and said that he could not partake in a ride-along with a field technician if he needed to use the cane. [*Id.* at 6.] Finally, on more than one occasion during the training course, Ms. Marcum told Mr. Frigo that his cane was in the way and that he needed to move it. [Dkts. 35-5 at 4; 50 at 2, 5.]

After further training, Ms. Marcum did not think that Mr. Frigo's performance improved and thus recommended that his employment with Brighthouse be terminated. [Dkt. 35-9 at 4-5 ¶ 12-14.] Susan Martin, a Brighthouse human resources officer, discussed Ms. Marcum's recommendation with Ms. Washington, and they decided to terminate Mr. Frigo's employment. [Dkts. 35-6 at 3 ¶ 9; 35-11 at 3 ¶ 7.] Brighthouse stated on Mr. Frigo's final termination form that he was "not a good fit," [dkt. 35-7 at 2], and his employment was terminated on August 25, 2011, [dkt. 35-11 at 3 ¶ 8].

On September 23, 2011, Mr. Frigo filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was terminated by Brighthouse due to his age, national origin, and disability. [Dkt. 1-2 at 1.] The EEOC issued a Dismissal and Notice of Rights letter on February 17, 2012, which stated that it was "unable to conclude that the information obtained establishes violations of the statutes." [*Id.* at 3.] Mr. Frigo, proceeding *pro se*, then brought the instant suit in this Court. [Dkt. 1.]

### III.
### DISCUSSION

Mr. Frigo contends that he was discharged by Brighthouse as a result of unlawful discrimination. He specifically brings claims against Brighthouse for age discrimination under the Age Discrimination in Employment Act ("ADEA"), for national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981, and for disability discrimination under the Americans with Disabilities Act ("ADA"). [Dkt. 1 at 1-2.] The Court will address each of Mr. Frigo's claims in turn.

#### A. Age Discrimination

Mr. Frigo, who was fifty-nine years old when hired by Brighthouse, [dkt. 35-1 at 4], maintains that he was discharged due to his age. The ADEA makes it unlawful for an employer

to discharge an employee due to that individual's age. *See* 29 U.S.C. § 623(a)(1). "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). This standard of proof can be met via the "direct method" or "indirect method." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003) (citations and quotation marks omitted). Mr. Frigo fails to carry his burden of proof under either method.

    1. Direct Method

The direct method requires a plaintiff to offer "direct evidence of animus—the so-called 'smoking gun.'" *Van Antwerp v. City of Peoria*, 627 F.3d 295, 298 (7th Cir. 2010). This "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) (citations and quotation marks omitted). Therefore, "[d]erogatory statements made by someone who is not involved in making the employment decision at issue are not evidence that the decision was discriminatory." *Id.* "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Cerutti*, 349 F.3d at 1061 (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)). "That circumstantial evidence, however, 'must point directly to a discriminatory reason for the employer's action.'" *Id.* (quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)).

Mr. Frigo submits evidence of two age-related comments directed at him during his employment with Brighthouse: first, that Ms. Aaron asked Mr. Frigo, "don't you know you are too old?" [dkt. 1-2 at 4]; and second, that a fellow trainee told Mr. Frigo that his cane made him look

like an old evil villain from a James Bond movie, [dkts. 1-2 at 4; 50 at 4].[2] These comments do not constitute direct evidence of age discrimination because neither Ms. Aaron—who was a CSR that Mr. Frigo shadowed before his training class began—or Mr. Frigo's fellow trainee were involved in the decision to terminate Mr. Frigo's employment. *See Rozskowiak*, 415 F.3d at 612; *Cerutti*, 349 F.3d at 1061. Indeed, Mr. Frigo admitted in his deposition that Ms. Marcum did not make any age-related comments to him. [Dkt. 35-4 at 2.] Moreover, "stray remarks in the workplace" such as these "are insufficient to establish that a particular decision was motivated by discriminatory animus," especially when, as here, they are not "in reference to the adverse employment action." *Hemsworth v. Quotesmith.com*, 476 F.3d 487, 491 (7th Cir. 2007) (citation omitted). Accordingly, Mr. Frigo cannot prove his ADEA claim under the direct method.

    2. Indirect Method

Mr. Frigo's evidence of age discrimination is also insufficient under the indirect method. This method requires a plaintiff to meet the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first set forth a *prima facie* case of discrimination, which requires a showing that: "(1) he was over forty years of age; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably." *Franzoni v. Hartmax Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002). If the plaintiff successfully makes this showing, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse action. *Id.* Should the defendant meet this require-

---

[2] The Court notes that Mr. Frigo's brief contains many allegations of discrimination that are unsupported by citations to the factual record. The Court therefore reiterates that it may only consider Mr. Frigo's assertions that are supported with citations to the record evidence. *See* Fed. R. Civ. P. 56(c)(1)(A).

ment, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Id.*

Brighthouse contends that Mr. Frigo cannot meet the second and fourth prongs of the *prima facie* case. [Dkt. 34 at 16-19.] Moreover, even if he could, Brighthouse maintains that Mr. Frigo cannot demonstrate that its reason for discharging him—his inability to grasp the information presented in the training course and his behavior toward Ms. Marcum during the course—were pretextual. [*Id.* at 20.] Because Mr. Frigo cannot establish that Brighthouse's reasons for terminating his employment were pretextual, the Court can assume without deciding that Mr. Frigo demonstrated a *prima facie* case of discrimination and focus solely on the question of pretext. *See Bodenstab v. Cnty. of Cook*, 569 F.3d 651, 657 (7th Cir. 2009); *Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 556 (7th Cir. 2001).

To establish that an employer's proffered justification was pretextual, "[i]t is not sufficient . . . for the employee to show that the employer acted incorrectly or undesirably by firing him; the employee must show that the employer did not honestly believe in the reasons it gave for firing him." *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996); *see also Stockwell v. Harvey*, 597 F.3d 895, 902 (7th Cir. 2010) ("[E]ven if the business decision was unreasonable, pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason."); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 754 (7th Cir. 2006) ("In order to be pretextual, the proffered reasons must be a lie; we look to whether the employer's reasons for its decision are honest and genuinely motivated.") (citation and quotation marks omitted). Declarations from several Brighthouse employees state that Mr. Frigo was struggling with the training

course material and thus provide evidentiary support for Brighthouse's proffered justification.[3] [*See* dkts. 35-9 at 3 ¶ 7, 4 ¶ 10; 35-10 at 1-2 ¶ 5; 35-11 at 1-2 ¶ 5.]

Mr. Frigo does not present any evidence that Brighthouse did not honestly believe he could not adequately grasp the material presented during the training course. Instead, he makes two other arguments, neither of which are availing. First, he repeatedly criticizes Brighthouse for not utilizing objective performance measures to corroborate their otherwise subjective assessments of his performance. [*See* dkt. 48 at 6, 7, 12, 14, 16.] But employers are not required to utilize objective performance measures to conclude that an employee is not meeting expectations; subjective determinations are sufficient. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) ("[A] subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas* . . . analysis."); *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1427 (7th Cir. 1986) ("A subjective qualification assessment does not convert an otherwise legitimate reason into an illegitimate one."). After all, the Court is not "a super-personnel department that sits in judgment of the wisdom of an employer's employment decisions." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 975 (7th Cir. 2012) (quoting *Appelbaum v. Milwaukee Metro. Sewerage Dis.*, 340 F.3d 573, 579 (7th Cir. 2003)). Instead, the Court's only task is to assess whether the employee's performance was not the true basis for the adverse employment decision. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) ("[I]t is not the court's concern that an employer may be wrong about its employee's

---

[3] Mr. Frigo repeatedly asserts that Ms. Marcum's timeline of events is incorrect. [*See, e.g.*, dkt. 48 at 6, 7, 18.] But Mr. Frigo's assertions are not coupled with arguments or evidence regarding how these alleged inaccuracies affect the substance of Ms. Marcum's declaration, specifically, that Mr. Frigo was struggling with the training course. In other words, the parties' disagreement as to the chronology of certain events is not material to the legal questions before the Court and thus is irrelevant in assessing Brighthouse's Motion for Summary Judgment. *See Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted.").

performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.") (alteration in original) (citation and quotation marks omitted).

Second, Mr. Frigo repeatedly criticizes Ms. Marcum, calling her statements regarding his performance issues "self serving fabrications . . . based on her hatred of him." [Dkt. 48 at 14.] But again, he presents no evidence supporting these assertions, as is required. *See* Fed. R. Civ. P. 56(c)(1)(A). He does, however, point the Court to notes he wrote during the training class that he contends demonstrate his understanding of the material. [Dkt. 48 at 11, 14.] But even assuming that the Court construed these notes as such proof, which it does not, they do not prove that Ms. Marcum or any other decisionmaker did not "honestly believe" that he was struggling with the material. *Wolf*, 77 F.3d at 919. This is because there is no evidence that Ms. Marcum or any other decisionmaker was aware of these notes or their contents. Again, when assessing pretext, the Court's "only concern is with the honesty of [Brighthouse's] beliefs," not with whether Mr. Frigo was actually struggling with the material. *Bodenstab*, 569 F.3d at 657. The Court does not doubt Mr. Frigo was of the view that he could adequately perform the duties of a CSR and proficiently complete the CSR training, but, unfortunately for him, that is not the test the Court must apply in assessing whether Brighthouse's reasons for terminating his employment were pretextual. *See id.* Accordingly, because there is no genuine issue of material fact as to pretext, the Court must conclude that Brighthouse is entitled to summary judgment on Mr. Frigo's ADEA claim.

### B. National Origin Discrimination

Mr. Frigo also brings claims under Title VII and § 1981, alleging that Brighthouse discriminated against him because he is Latino. Discrimination claims based on national origin

may be brought pursuant to Title VII or § 1981 and are "nearly identical." *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1068 (7th Cir. 2012). Like age discrimination claims under the ADEA, Mr. Frigo may attempt to prove his national origin discrimination claims under the same direct or indirect methods articulated above. *Id.*

Brighthouse contends that the Court need not assess the evidence on which Mr. Frigo relies under either method because Mr. Frigo presents no evidence that Ms. Marcum or another decisionmaker knew he is Latino. [Dkt. at 21-22.] The Court agrees. "Usually, an employer's lack of knowledge about a protected category [precludes] discrimination claims [based on that category]." *Holmes v. Potter*, 384 F.3d 356, 361 (7th Cir. 2004). Indeed, the Seventh Circuit has stated that it is "impossible" to discriminate on the basis of race under § 1981 if the alleged discriminator "had no way of knowing" the plaintiff's race. *Purghoraishi v. Flying J, Inc.*, 449 F.3d 751, 758 (7th Cir. 2006).

Here, there is no evidence that Ms. Marcum or any other decisionmaker had knowledge that Mr. Frigo is Latino. It is true that Mr. Frigo's Employee Personal Data form stated he was of "mixed" race or ethnicity, [dkt. 35-1 at 11], but there is no evidence that Ms. Marcum or another decisionmaker was aware of, let alone read, this form. Nor would Mr. Frigo's Latino status be obvious from his outward appearance, as Mr. Frigo acknowledged that he may not appear Latino to others. [Dkt. 35-2 at 2-3.] Despite Mr. Frigo's contention that Ms. Marcum knew he is Latino, [dkt. 48 at 8], the evidence on which he relies does not bear this out. Mr. Frigo points only to his pre-training course statement to Ms. Saint Clair and other trainees that he is Latino, [dkt. 50 at 3], but there is no evidence that Ms. Marcum or any other decisionmaker was aware of this conversation, and Ms. Saint Clair was not involved in the decision to terminate his employment. Therefore, Brighthouse is entitled to summary judgment on Mr. Frigo's Title VII and

§ 1981 claims because there is no evidence that a decisionmaker was aware of his national origin, precluding Brighthouse from discriminating on that basis.[4] *Purghoraishi*, 449 F.3d at 758.

### C. Disability Discrimination

Mr. Frigo also brings a disability discrimination claim under the ADA, which prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Under the ADA, employers may not discriminate against employees that have either actual disabilities, *id.* § 12102(1)(A), or perceived disabilities, *id.* § 12102(1)(C). *See Ragan v. Jeffboat, LLC*, 149 F. Supp. 2d 1053, 1062-63 (S.D. Ind. 2001) (explaining that the ADA prohibits discrimination against employees with both "actual disabilit[ies]" and "perceived disabilit[ies]"). Brighthouse does not contest that Mr. Frigo has a disability as defined by the ADA—that is, it does not dispute that he has an actual or perceived disability due to his knee problems, which necessitate the use of a cane.[5]

The sole question, therefore, is whether Mr. Frigo can prove that Brighthouse discriminated against him because of that disability. Like claims under the ADEA and Title VII, a plaintiff may prove an ADA claim under the direct or indirect method. *See Dickerson v. Bd. of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). In an attempt to

---

[4] Ms. Marcum's lack of knowledge regarding Mr. Frigo's Latino status is why the Court need not address the evidence that, while teaching Mr. Frigo's training course, Ms. Marcum "portrayed a Latina in a very demeaning way." [Dkt. 50 at 5.] Even if Ms. Marcum was demeaning toward Latinos during the training course, it remains "impossible" for Ms. Marcum to have discriminated against Mr. Frigo because he was Latino if she was unaware of that fact. *Purghoraishi*, 449 F.3d at 758.

[5] Although Mr. Frigo criticizes Brighthouse's use of the term "perceived disability," it does not use the phrase, as Mr. Frigo seems to think, to imply that his claim of disability is disingenuous or untrue; rather, it uses the phrase as a legal term of art in conceding that Mr. Frigo has a disability as defined by the ADA.

carry his burden, Mr. Frigo adduces evidence of several comments made regarding his use of a cane:

- Ms. Marcum asked Mr. Frigo if he was using the cane when hired, [dkt. 50 at 4];

- Another trainee told Mr. Frigo that his cane made him look like an old evil villain from a James Bond movie, [*id.* at 5];

- Ms. Marcum asked Mr. Frigo how long he would need to use the cane and said that he could not partake in a ride along with a field technician if he needed to use the cane, [*id.* at 6];

- On more than one occasion during the training course, Ms. Marcum told Mr. Frigo that his cane was in the way and that he needed to move it, [dkts. 35-5 at 4; 50 at 2, 5.][6]

As detailed below, these facts are insufficient for Mr. Frigo to prove discrimination under the ADA.

1. Direct Method

"When proceeding under the direct proof method, in order for allegedly discriminatory remarks to 'qualify as direct evidence of discrimination, the plaintiff must show that the remarks were related to the employment decision in question.'" *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000) (quoting *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1403 (7th Cir. 1996)). Even when reasonable inferences are drawn in Mr. Frigo's favor, he has not shown that any of the above statements were related to Brighthouse's decision to terminate his employment.

---

[6] Ms. Marcum denies ever making several of these statements, [dkt. 35-9 at 6], but in assessing Brighthouse's Motion for Summary Judgment, the Court must determine whether a reasonable jury could rule in favor of Mr. Frigo if it credited his evidence of discrimination.

As to Ms. Marcum asking Mr. Frigo whether he was using the cane when hired, he provides no context for this question other than the question itself and the date on which it was asked, August 15, 2011, the first day of the training course. [Dkt. 50 at 4.] Thus, the Court has no basis to conclude that the question was asked in a discriminatory manner or, perhaps more importantly, was at all related to Ms. Marcum's ultimate recommendation that Brighthouse terminate Mr. Frigo's employment. It is certainly not the type of "smoking gun" statement required to proceed under the direct method, *e.g.*, "I fired you because of your . . . disability." *Robin*, 200 F.3d at 1088. And even though circumstantial evidence can be sufficient under the direct method, such evidence "must point *directly to a discriminatory reason for the employer's action*." *Cerutti*, 349 F.3d at 1063 (quoting *Adams*, 324 F.3d at 939) (emphasis in original). Without additional evidence linking this question to Ms. Marcum's recommendation that Brighthouse terminate Mr. Frigo's employment, this question is no more than a "stray workplace remark[]" that is not linked to the ultimate employment decision. *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727 (7th Cir. 1998) ("[B]efore seemingly stray workplace remarks will qualify as direct evidence of discrimination, the plaintiff must show that the remarks were related to the employment decision in question.") (citation and quotation marks omitted).

The other three remarks on which Mr. Frigo relies also fail to advance his claim under the direct method. The "old villain" remark was made by a fellow trainee who was not involved in the employment decision process and thus cannot constitute evidence of discrimination. *Rozskowiak*, 415 F.3d at 612 ("Derogatory statements made by someone who is not involved in making the employment decision at issue are not evidence that the decision was discriminatory."). As to Ms. Marcum's question regarding how long Mr. Frigo needed to use his cane and her corresponding statement that the cane precluded him from participating in a ride-along with a

field technician, the undisputed evidence demonstrates that the ride-along is not necessary to complete the training course and that multiple trainees in the past have not completed the ride along for medical reasons. [Dkt. 35-9 at 3 ¶ 6.] Viewed in this light, even if the Court assumes that these statements are somehow discriminatory, there is no evidence that they were related to the ultimate employment decision and thus do not constitute direct evidence of discrimination. *See Cerutti*, 349 F.3d at 1063; *Cianci*, 152 F.3d at 727. Finally, Ms. Marcum's repeated requests that Mr. Frigo move his cane do not create an inference of discrimination. They simply reflect that Mr. Frigo placed his cane in an undesirable location during class, not that his cane, and thus his disability, were problematic as a general matter. More importantly, as with the other comments, there is no evidence that these requests bore any relationship to the ultimate employment decision, precluding them from supporting Mr. Frigo's ADA claim. *See Cerutti*, 349 F.3d at 1063; *Cianci*, 152 F.3d at 727.

In sum, none of the evidence on which Mr. Frigo relies suffices under the direct method. There is no direct statement of discriminatory intent from a decisionmaker, nor do these four statements construct a "convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker," as none of them "point directly to a discriminatory reason for the employer's action." *Cerutti*, 349 F.3d at 1061 (citations and quotation marks omitted). Instead, they are at most a few "stray remarks" that arguably are not even discriminatory, let alone directly related to the adverse employment decision. *Cianci*, 152 F.3d at 727.

2. Indirect Method

For substantially the same reasons Mr. Frigo's ADEA claim failed under the indirect method, so too does his ADA claim. The Court therefore does not need to repeat its analysis at length here. As with his ADEA claim, the Court assumes without deciding that Mr. Frigo could

establish a *prima facie* case of ADA discrimination, *see Bodenstab*, 569 F.3d at 657, but concludes that Mr. Frigo presents no evidence that Brighthouse's proffered justification for discharging him was pretextual. As discussed above, Brighthouse asserted that Mr. Frigo's employment was terminated because he did not grasp the concepts covered in the training course and because he was openly critical of the course while Ms. Marcum was teaching. In short, Brighthouse stated that he was not a "good fit." [Dkt. 35-7 at 2.]

Mr. Frigo cannot point to any evidence that Brighthouse did not "honestly believe the reasons it gave for firing him." *Wolf*, 77 F.3d at 919. While the cane-related comments on which Mr. Frigo relies demonstrate Brighthouse's awareness of his disability and the limitations it might cause, there is no evidence that these issues, rather than the performance-related issues Brighthouse proffered, were the true bases for Brighthouse's adverse employment decision. As with the ADEA claim, this precludes Mr. Frigo from carrying his burden to demonstrate pretext and thus requires this Court to grant summary judgment in favor of Brighthouse on Mr. Frigo's ADA claim.

### D.  Retaliation Claim

On various occasions in both his Complaint and his brief, Mr. Frigo contends that Brighthouse illegally retaliated against him. [*See, e.g.*, dkts. 1 at 3; 48 at 20.] Brighthouse argues that any retaliation claim must be dismissed because Mr. Frigo failed to exhaust his administrative remedies because he did not assert a retaliation claim before the EEOC.

"'Generally a plaintiff may not bring claims under Title VII that were not originally brought among the charges to the EEOC.'" *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) (quoting *Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995)). However, a plaintiff may bring claims "that are 'like or reasonably related to the allega-

tions of the [EEOC] charge and growing out of such allegations.'" *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)).  "Normally," however, "retaliation and discrimination charges are not considered 'like or reasonably related' to one another." *Id.* at 864-65.

It is undisputed that Mr. Frigo did not check the retaliation claim box on his EEOC Charge of Discrimination form or otherwise assert a retaliation claim before the EEOC. [Dkts. 35-4 at 11; 35-5 at 9.] Moreover, the allegations on Mr. Frigo's Charge of Discrimination form make clear that his claims stemmed from Brighthouse's allegedly discriminatory termination of his employment due to his age, national origin, and disability, not from alleged retaliation due to Mr. Frigo's participation in a protected activity. [Dkt. 35-5 at 9.] In short, because Mr. Frigo's EEOC charge did not mention "retaliation or any other words to that effect," it cannot "fairly be said that the charge alleges retaliation," and thus Brighthouse is entitled to summary judgment on any such claim.[7]  *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 545 (7th Cir. 1988) (affirming the district court's grant of summary judgment to the defendant on the plaintiff's unexhausted retaliation claim); *see also Swearnigen-El*, 602 F.3d at 864.

## IV.
### CONCLUSION

---

[7] The Court recognizes that, although Title VII and § 1981 claims are "nearly identical," *Dass*, 675 F.3d at 1068, unlike Title VII claims, § 1981 claims are available "regardless of whether one has pursued his Title VII administrative remedies." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 166 (7th Cir. 1976) (en banc). Amidst Mr. Frigo's various allegations regarding retaliation, he does not identify under which statute, if any, he desired to bring his retaliation claim. However, even if Mr. Frigo were to belatedly assert that he desired to bring a retaliation claim under § 1981, he would not be permitted to do so. The Court's August 28, 2012 Order construed Mr. Frigo's Complaint as setting forth the various discrimination claims addressed herein, but not a retaliation claim. [Dkt. 14 at 1.] Furthermore, the Court gave Mr. Frigo two weeks to file a notice correcting this statement of his legal claims if it was incorrect, [*id.*], which he did not do. Accordingly, for this additional reason, any attempt by Mr. Frigo to add such a claim at this juncture is not permitted.

For the foregoing reasons, the Court **GRANTS** Brighthouse's Motion for Summary Judgment. [Dkt. 33.] Judgment will enter accordingly.

09/24/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via U.S. Mail:**

FRED R. FRIGO
2389 N. County Road 130 E.
Frankfort, IN 46041

**Distribution via ECF only:**

Melissa K. Fuller
JACKSON LEWIS LLP
melissa.fuller@jacksonlewis.com

Craig W. Wiley
JACKSON LEWIS LLP - Indianapolis
craig.wiley@jacksonlewis.com